**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ETHAN TSAI and INFINITE ARCHE INC.,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**JABRIEL AWAD and MITCHELL WOLFE,**<br><br>        **Defendants.** | **CIVIL ACTION NO.**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**COME NOW** the Plaintiffs, Ethan Tsai and Infinite Arche Inc. (hereinafter referred to individually as "Plaintiff Tsai" or as "Plaintiff Infinite," or jointly as "Plaintiffs"), by and through its undersigned counsel, Gerald Gilliard and The Leiser Law Firm, and hereby files this complaint against Jabriel Awad and Mitchell Wolfe (hereinafter referred to individually as "Defendant Awad" or as "Defendant Wolfe," or jointly as "Defendants"), and avers the following:

### I.  JURISDICTION

1.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiffs and the Defendants are located and reside in different states, and because the amount in controversy is well in excess of $75,000.00.

2.       This Court has jurisdiction over the parties in this action because Plaintiff Infinite is a Virginia domestic corporation that was incorporated in Virginia, and which has a principal business address of 2650 Unicorn Court, Herndon, Virginia 20171, and because Plaintiff Tsai is the owner of Infinite Arche Inc., and he resides in Herndon, Virginia.  Both Defendants reside in Ohio. Defendant

Awad resides at 75 Nestico Drive, Cuyahoga Falls, Ohio 44223.  Defendant Wolfe's business address

is Motion Cincinnati LLC, 2710 Park Avenue, Suite 100, Cincinnati, Ohio 45212.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Venue is proper in the Eastern

District of Virginia because: (a) the Plaintiff Infinite has a principal place of business within the

Eastern District of Virginia; (b) the Plaintiff Tsai resides within the Eastern District of Virginia; (c) the

defamation and other tortious conduct by the Defendants was nationwide and beyond, including within

the Eastern District of Virginia, and (d) the damages from the defamation and other tortious conduct

impacts the Plaintiffs' nationwide and international business, including the damages to the business

operations of the Plaintiff Infinite that are focused in the Eastern District of Virginia.  Venue is also

proper in this Court because the contractual breaches by the Defendant Awad have adversely impacted

the Plaintiffs' business that is located within the Eastern District of Virginia.

## II.   PARTIES

4.      The Plaintiff Infinite (hereinafter also referred to as "Infinite") is a domestic corporation that

was incorporated in the Commonwealth of Virginia.  Infinite is a supplier and broker of high end

footwear and other luxury goods.  This business has been in operation for almost five (5) years, and

had an excellent reputation in the industry/market until it was defamed by the Defendants.

5.      The Plaintiff Tsai (hereinafter also referred to as "Tsai") is the owner and registered agent of

Infinite, and who resides in Herndon, Virginia.

6.      The Defendant Awad (hereinafter also referred to as "Awad") is an individual who resides in

Ohio.  Awad is a seller or broker of shoes.

7.      Defendant Wolfe (hereinafter also referred to as "Wolfe") is an individual residing in Ohio.

Wolfe is a seller or broker of shoes.

### III.   FACTUAL ALLEGATIONS

8.      Plaintiffs utilize reputable authentication platforms such as StockX, GOAT, Poizon, The RealReal, and OX Legit App, all of which verify item authenticity before delivery.  The Plaintiffs also review authenticity through submitted photographs.

9.      All of the shoes that are the subject of this litigation were sourced by the Plaintiffs through a reputable supplier.

10.     The Plaintiffs and Defendant Awad conducted business transactions from August of 2024 to December of 2024, involving the supply and sale of footwear.  These contractual arrangements involved tens of thousands of dollars.

11.     On November 12, 2024, Defendant Wolfe authored, created, and published online a defamatory video that alleged or clearly implied that the Plaintiffs were selling counterfeit Maison Mihara Yashuhiro footwear.

12.      In that video, created at Defendant Wolfe's store, Motion Shop, this Defendant incorrectly compared a pair of black Maison Mihara Yashuhiro shoes with a green pair of Maison Mihara Yashuhiro shoes (sourced from the Plaintiffs) and he falsely labeled Plaintiffs' shoes as being fake.

13.     The reference to the green pair of Maison Mihara Yashuhiro shoes was widely understood within shared circles, within the industry/market, and due to the well-known fact that the Plaintiffs were Defendant Wolfe's primary source for Maison Mihara Yashuhiro footwear, that the footwear being falsely labeled as fake originated from the Plaintiffs.

14.     Defendant Wolfe has also been using footwear sourced from the Plaintiffs, without authorization, to make false comparisons to other footwear, and to mislabel the footwear from the Plaintiffs as "fake."

15.     These unauthorized and maliciously false representations by Defendant Wolfe have severely damaged the Plaintiffs' reputation, business brand integrity, and overall standing in the industry/market.

16.     Defendant Awad is known to have spread false statements online and in person in early December of 2024 alleging that shoes sourced from the Plaintiffs were fake.  Because the Defendant Awad had requested refunds for shoes before that time, and others also requested such refunds, the Plaintiffs believe that he also made these false statements as early as November of 2024, if not earlier, and that such false statements continued for months thereafter.

17.     Shortly after the publication of the video on November 12, 2025, the Plaintiffs began to receive requests to return shoes based upon alleged questions as to authenticity, resulting in losses to the plaintiffs of many tens of thousands of dollars.

18.     As a direct and proximate result of the false claims by Defendants that the shoes from the Plaintiff were counterfeit, from November 12 to November 19, 2024, Defendant Awad and others requested returns that resulted in refunds of approximately $100,000.00.

19.     The Plaintiffs demanded the return of all items for which a refund had been requested or issued. Although some items have been returned, Defendant Awad has not returned many pairs of footwear that he repeatedly promised would be shipped back.  The value of the non-returned items is in the tens of thousands of dollars.

20.     The refusal to return all the items for which a refund has been provided eliminates any fair opportunity of the Plaintiffs to further authenticate these shoes and to otherwise defend themselves from the false claims of supplying "fake" goods.

21.     Some of the product that was returned to the Plaintiffs by Defendant Awad, or through other persons, is missing its original packaging and is in a degraded condition from when it was originally

sourced from the Plaintiffs.  For example, some shoes are missing laces and some shoes now have other defects that have made them unsellable.

22.     Defendant Awad may have made fraudulent requests for refunds because some stores, where he supplied Plaintiff's product, were still selling the subject shoes after the requested refund, and these stores may have actually sold most, if not all, of the subject shoes.

23.     Defendant Awad has failed to return many pairs of shoes, and he has not returned the money that was refunded for those unreturned shoes.

24.     The sales of the Plaintiffs have been greatly reduced by many tens of thousands of dollars as a result of the defamatory statements of the Defendants.

25.     On April 22, 2025, the Plaintiffs sent a "Cease and Desist Letter" to the Defendant Awad asking him to stop making any defamatory statements about the Plaintiffs, and asking this Defendant to return all goods to the Plaintiffs for which a refund was requested, provide payment to the Plaintiffs of all refunded amounts and other money owed to the Plaintiffs, and issue a written retraction of all claims that the Plaintiffs' goods were fake.

26.     To date, the Defendant Awad has failed to stop, remove, revise, or explain the comments he maliciously posted online and stated in person that defamed the Plaintiffs.  Defendant Awad has also failed to return the items for which he received a refund, claiming that he cannot locate or obtain those items.  Consequently, the harm to the Plaintiffs continues to this day and is resulting in ever-increasing damages.

27.     On April 22, 2025, the Plaintiffs sent a "Cease and Desist Letter" to the Defendant Wolfe asking him to stop making any defamatory statements about the Plaintiffs, and asking this Defendant to stop using shoes sourced from the Plaintiffs for inaccurate and improper comparison to other shoes, to remove any existing content defaming the Plaintiffs from all public and private platforms, and to stop other acts that were causing harm to the Plaintiffs..

28.     To date, the Defendant Wolfe has only taken down the video post, but he has not posted a retraction of his false claims, he has not apologized for making these false claims, and he has not even explained the comments he maliciously posted on November 12, 2024, that defamed the Plaintiffs.  In fact, Defendant Wolfe did not respond to the letter that was personally served upon him to even try to defend or to explain his malicious conduct.  Consequently, the harm to the Plaintiffs continues to this day and is resulting in ever-increasing damages.

29.     As a direct and proximate result of Defendant's defamatory comments, many buyers, sellers, and brokers now refuse to work with the Plaintiffs.

30.     The Plaintiff has lost, and continues to lose, many sales contracts because of the defamatory statements made by the Defendants, that it publicized extensively online and personally.

31.     The internet is being misused by the Defendants to ruin the business of the Plaintiffs and to destroy the livelihood of Plaintiff Tsai.  The damage to the Plaintiffs' business eliminates or hinders them as competitors to the Defendants.

32.     The Plaintiff has already experienced a loss of business due to the defamatory comments of the Defendants, and due to the contractual losses, that totals well over $75,000.00.

## IV.    CLAIMS FOR RELIEF

<u>**COUNT I**</u>
<u>**DEFAMATION**</u>
**(both Defendants)**

33.     The Plaintiffs reassert and incorporate Paragraphs One (1) through Thirty-Two (32) of this Complaint as though fully set forth herein.

34.     The Defendants have used insulting words against the Plaintiffs, that by ordinary usage, usual construction and common acceptance, constitute insults.

35.     The false statements by Defendants have harmed the reputation of the Plaintiffs, and interfered with Plaintiffs' right to personal security that includes uninterrupted entitlement to enjoyment of their good reputation.

36.     The false statements by Defendants have subjected the Plaintiffs to public hatred, contempt, ridicule, embarrassment and disgrace.

37.     The false statements were published to third parties using the internet and personal conversations.

38.     The false statements were made, at a minimum, negligently and with reckless disregard for the truth.  Although the Plaintiffs are not public figures that must show actual malice, the Defendants did exhibit actual malice in publishing these false statements as they intended to harm the Plaintiffs

39.     The  actions of the Defendants clearly constitute defamation against the Plaintiff, including defamation  *per se.*

40.     The false accusations against the Plaintiffs are defamation *per se* because:

  a.  They accuse the Plaintiffs of a serious criminal offense in selling counterfeit goods;

  b.  They accuse the Plaintiffs of professional incompetence (in failing to identify fake goods) or of professional dishonesty (in selling fake goods); and

  c.  The Defendants' statements have prejudiced the Plaintiffs in their profession and have damaged their ability to earn a living.

41.     As a direct and proximate result of the defamatory conduct of the Defendants, the Plaintiffs have suffered and continue to suffer damages to their reputation and to their business that greatly exceeds $75,000.00.

42.     The Plaintiffs are entitled to compensatory damages, both actual and general, against the Defendants for the loss of business and for the damage to reputation.  General damages to the Plaintiffs

include humiliation and mental suffering.

43.     The Defendants acted intentionally, willfully, and wantonly, and with actual malice against the Plaintiffs, so the Plaintiffs are entitled to an award of punitive damages as determined by a jury.  The conduct of Defendants was particularly egregious in that they intended to harm the Plaintiffs with known lies.

**COUNT II**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(both Defendants)**

44.     Plaintiffs reassert and incorporate Paragraphs One (1) through Forty-Three (43) of this Complaint as though fully set forth herein.

45.     The Plaintiffs had an ongoing good business relationship and positive business expectancy with buyers, sellers, and brokers in the shoes industry/market.

46.     These ongoing business relationships, and expected continuation of these business relationships, was reasonably likely to benefit the Plaintiffs financially for many years.  The Plaintiffs had a reasonable expectation that this business relationship would continue in a similar vein for many more years. A continuation of these business relationships and even future contracts would have resulted, but for the malicious interference by the Defendants.

47.     The Defendants knew of these continuing business relationships and these business expectancies between the Plaintiffs and buyers, sellers, and brokers.

48.      The Defendant intentionally and maliciously interfered with these business relationships between the Plaintiffs and their business partners.  This interference caused a termination of business relationships and the loss of business expectancies.

49.     The interference in these business relationships and business expectancies by the Defendants was improper, dishonest, malicious, intentional, and without justification.

50.    The Defendants intentionally and improperly induced Plaintiffs' business partners to cancel contracts, or to not enter into contracts, with the Plaintiffs.   These business partners would have continued contracts with the Plaintiffs, and would have entered into future contracts with the Plaintiffs, but for the malicious interventions by Defendants.

51.    The Defendants lied in unfairly disparaging the quality of the items supplied by the Plaintiffs and in falsely accusing or implying improper conduct by the Plaintiffs.  This was the use by Defendants of misrepresentation, deceit, and defamation as improper means of interfering with these relationships and expected relationships.

52.    The primary purpose of the conduct of Defendants was to cause an end to existing business relationships and future business relationships between Plaintiffs and other buyers/sellers/brokers, and to deny to the Plaintiffs their prospective economic advantage.

53.    The misrepresentations and lies of the Defendants were made maliciously, intentionally, and without justification.

54.    The Defendants interfered improperly with Plaintiffs' business relationships because the Defendants were motivated by malicious intent to harm the Plaintiffs.  The Defendants were substantially certain that their conduct would result in Plaintiffs' loss of shoe contracts and the loss of Plaintiffs' prospective economic advantage.

55.    The Defendants were in a competitive relationship with the Plaintiffs in that they bought and sold with the same customers and businesses.

56.    The Defendants interfered improperly with Plaintiffs' business relationships because the Defendants wanted to maliciously and unjustifiably harm the Plaintiffs, with a resulting benefit to their own businesses.

9

57.     As a direct and proximate result of the misconduct and interference by Defendants, the Plaintiffs suffered damages in the loss of contracts and of their prospective economic advantage. The improper conduct of the Defendants caused other companies and persons to disrupt their business relationships with the Plaintiffs.

58.     The plaintiffs are entitled to compensatory damages, including, but not limited to, future lost profits.

59.     The Plaintiffs are entitled to receive compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants.

60.     The Court should also issue equitable relief against the Defendants barring them from continuing the defamation of the Plaintiffs, and directing the Defendants to take all reasonable actions to remove, retract, and correct any negative comments about the Plaintiffs on any private or public forum.

**COUNT III**
**FALSE LIGHT**
**(both Defendants)**

61.     Plaintiffs reassert and incorporate Paragraphs One (1) through Sixty (60) of this Complaint as though fully set forth herein.

62.     The Defendants have portrayed the Plaintiffs in a misleading way that could, and has, caused harm to their reputation.

63.     The Defendants publicized their false statements about the Plaintiffs to third parties.

64.     The publication of this false information created a false impression about the Plaintiffs.

65.     The false accusations by Defendants are offensive to a reasonable person.

66.     Although the Plaintiffs are not public figures that must demonstrate actual malice, the Defendants made these false statements with knowledge of their falsity and/or with reckless disregard for the truth.

67.     The Plaintiffs are entitled to compensatory damages, punitive damages, attorneys' fees, and costs for placing the Plaintiffs in a false light.

## COUNT IV
## FRAUD
### (Defendant Awad)

68.     Plaintiffs reassert and incorporate Paragraphs One (1) through Sixty-Seven (67) of this Complaint as though fully set forth herein.

69.     The Defendant Awad intentionally misrepresented the material facts to deceive the Plaintiffs, as follows:

> a. He falsely claimed that the items provided by the Plaintiffs were fake so as to avoid his financial obligations to the Plaintiffs;

> b. He falsely claimed that persons/businesses were unable to sell the items provided by the Plaintiffs, when they were able to sell them, to avoid his contractual obligations to the Plaintiff; and

> c. He falsely claimed that he was going to return the items that were allegedly fake, when he had no intention to do so, so that he could fraudulently obtain refunds from the Plaintiffs.

70.     The Defendant Awad intentionally misrepresented these facts, or recklessly made these false representations in disregard for the truth.  Defendant Awad never intended to perform as he promised.

71.     The Plaintiffs reasonably relied upon these representations to issue refunds to the Defendant Awad, even though the Plaintiffs believed the items were authentic.

72.     The Plaintiffs have been damaged by these misrepresentations in that they issued refunds to Defendant Awad and to others, and have not received all of the subject items back or a payback of the refunds for unreturned items.

73.     Defendant Awad is in a position of expertise as to the authenticity of shoes, and he made a false statement of opinion to induce reliance by the Plaintiffs, which is fraud.

74.     There is clear and convincing evidence of this fraud by Defendant Awad because he never returned the subject items to the Plaintiffs as promised, he has kept the refund money despite this failure to return all of the items, other persons/businesses were able to sell the subject items, and he allegedly does not have the items to prove that they are fake.

75.      The Plaintiffs are entitled to compensatory damages, punitive damages, attorneys' fees, and costs due to this fraud by Defendant Awad.

**COUNT V**
**BREACH OF CONTRACT**
**(Defendant Awad)**

76.     Plaintiffs reassert and incorporate Paragraphs One (1) through Seventy-Five (75) of this Complaint as though fully set forth herein.

77.     The Plaintiffs and Defendant Awad had a contractual relationship that is evidenced by invoices and payments, and by communications between these parties.  The Plaintiffs were contracted to supply footwear for which Defendant Awad was obligated to pay.

78.     The Defendant Awad breached this contract(s) by failing to pay for many of the shoes that he received, and/or failing to refund money that he received for returns for items that he never returned.

79.     The Defendant Awad promised to return items for which he had requested a refund.  Based upon that representation, the Plaintiffs detrimentally relied and refunded money.

80.     The failure to return the items on which Defendant Awad received a refund, or to return the money that was refunded, was a breach of his contractual obligations to the Plaintiffs.

81.    The Plaintiffs are entitled to compensatory damages for the breach of contract, along with attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Honorable Court grant the following relief:

a.   Trial by jury;

b.   A finding that Defendants violated Plaintiffs' rights as set forth herein;

c.   Award to Plaintiffs, for the tortious conduct of the Defendants, full compensatory damages, reasonable attorney's fees, punitive damages, and costs;

d.   Award damages to the Plaintiff in the amount of money that was refunded for non-returned items;

d.   Enter a judgment against Defendants and order Defendants to pay Plaintiffs compensatory and punitive damages in an amount to be determined at trial;

e.   Award to Plaintiffs compensatory damages well in excess of $75,000.00;

e.   Award to Plaintiffs punitive damages well in excess of $75,000.00;

f.   Award to Plaintiffs all reasonable costs and attorneys' fees incurred in connection with this action;

g.   Issue an order directing the Defendants to take all reasonable action to remove, retract, and correct any negative comments about the Plaintiffs on any private or public forum;

h.   Award to Plaintiffs such other and further equitable relief as the Court deems appropriate under the circumstances;

i.   Award to Plaintiffs any other relief this Court deems proper and just.


Dated: November 7, 2025                    Respectfully submitted,


                            _____/s/ Gerald L. Gilliard, Esq._____

Gerald L. Gilliard, Esq.
THE LEISER LAW FIRM
VSB No. 70094
1750 Tysons Boulevard, Suite 1500
Tysons, Virginia 22102
Telephone: (703) 734-5000
Facsimile: (703) 734-6000
Email: glgilliard@leiserlaw.com

*Attorneys for Plaintiffs*

## **JURY DEMAND**

The Plaintiffs request a jury trial on all questions of fact raised by this Complaint.


Respectfully submitted this 7th day of November, 2025.


_____/s/ Gerald L. Gilliard, Esq._____
Gerald L. Gilliard, Esq.
THE LEISER LAW FIRM
VSB No. 70094
1750 Tysons Boulevard, Suite 1500
Tysons, Virginia 22102
Telephone: (703) 734-5000
Facsimile: (703) 734-6000
Email: glgilliard@leiserlaw.com

*Attorneys for Plaintiffs*

## <u>VERIFICATION</u>

I, Ethan Tsai, the owner and authorized representative of Infinite Arche Inc., the undersigned, do hereby swear and affirm, under penalty of perjury, that the information contained in the foregoing Complaint, to the best of my information, knowledge, and belief, is a true, accurate, and complete statement of the facts.

November 7, 2025                    _____
                                   ETHAN TSAI